UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
ALTON L. LAWSON, SR.,

                    Petitioner,

        -against-                        MEMORANDUM & ORDER
                                         10-CV-0477(JS)
JOSEPH SMITH, Superintendent of
Ulster Correctional Facility,[1]

                    Respondent.
----------------------------------X
APPEARANCES
For Petitioner:     Alton L. Lawson, Sr., pro se
                    08-R-0058
                    Ulster Correctional Facility
                    P.O. Box 800
                    Napanoch, NY 12458

For Respondent:     Jason Richards, Esq.
                    Nassau County District Attorney's Office
                    262 Old Country Road
                    Mineola, NY 11501


SEYBERT, District Judge:

        Alton L. Lawson, Sr. ("Petitioner") petitions this

Court pro se for a writ of habeas corpus pursuant to 28 U.S.C. §

2254.  For the following reasons, his Petition is DENIED.

                            BACKGROUND

I. Factual Background

        "Between 2004 and 2005, [P]etitioner convinced Esther

Service and Beatrice Williams to refinance their homes with his

assistance.  Instead of refinancing the properties, however, the

---

[1] The Court, sua sponte, directs the Clerk of the Court to update
the caption to reflect the superintendent of Petitioner's
current facility.

[P]etitioner tricked each woman into selling her home without her knowledge." (Resp't's Aff., Docket Entry 15, ¶ 5.) "[B]y taking advantage of his victims' lack of sophistication and trust in him, [P]etitioner enriched himself." (Resp't's Aff. ¶ 6.)

A. Esther Service Transaction

In 2004, after losing her jobs and missing four mortgage payments, Esther Service ("Service") received a foreclosure notice from her mortgage lender, Wells Fargo Bank. (Trial Tr., Docket Entry 15-6, 517:16-518:5.) Around the same time, Service received a call from Petitioner who told Service he could help her refinance her home in order to avoid foreclosure. (Trial Tr., Docket Entry 15-6, 518:11-519:13.) Service agreed to meet with Petitioner at her home. (Trial Tr., Docket Entry 15-6, 519:25-520:1.)

Before the scheduled meeting, Service found, on her front door, a business card that read "Gregory Abram and Associates". (Resp't's Am. Br.[2] at 3-4.) On the back of the card, a handwritten note (that matches Petitioner's handwriting) "suggested that the firm specialized in real estate refinancing." (Resp't's Am. Br. at 4.) "Unbeknownst to Service, Gregory Abram's law firm had dissolved and was no

_____

[2] Respondent's Amended Brief can be found at Docket Entry 42, ECF pp. 15-37.

longer in existence in 2004," nor did Abram practice law at the time. (Resp't's Am. Br. at 4.)

At one of their subsequent meetings, Petitioner told Service to execute a document, which he told Service related to the refinance and a service agreement. (Trial Tr., Docket Entry 15-6, 529:3-7.) Petitioner did not show Service the entire document, which, in actuality, was a contract of sale; instead, he showed her only the signature page. (Trial Tr., Docket Entry 15-6, 529:8-530:24.) Petitioner also covered a portion of the signature page with his hand; this portion stated "contract of sale". (Trial Tr., Docket Entry 15-6, 538:11-539:2.) Service believed she was signing a document related to a refinancing, not a contract of sale. (Trial Tr., Docket Entry 15-6, 539:3-8.)

On August 2, 2004, Petitioner called Service and told her that the closing would take place on the same day. (Trial Tr., Docket Entry 15-6, 539:17-18.) Service expected the closing would regard her refinancing her home, not selling it. (Trial Tr., Docket Entry 15-6, 540:5-10.) Petitioner told Service she would receive $10,000 at the closing. (Trial Tr., Docket Entry 15-6, 540:18-23.) Service stated that she never received the $10,000 at the closing or at any time through the underlying criminal trial. (Trial Tr., Docket Entry 15-6, 540:24-541:4.) Petitioner told Service to sign papers,

including her deed, which she believed related to refinancing, not selling, her home. (Trial Tr., Docket Entry 15-6, 543:7-19.) Petitioner actually sold Service's home to Chester Matthews ("Matthews"). (See Resp't's Am. Br. at 5.)

Petitioner also told Service to sign a "Service Agreement", which Petitioner told Service regarded her refinanced mortgage. (Trial Tr., Docket Entry 15-7, 591:7-16; Resp't's Am. Br. at 5.) The agreement required Service to pay $10,616 as an immediate down payment and $1,000 per month for eight months. (Resp't's Am. Br. at 5.) At the end of the ten-month term, Service would have the opportunity to repurchase the house at the fair market value. (Trial Tr., Docket Entry 15-7, 594:7-10.) Service would not have signed the agreements if she knew she was selling her home. (Trial Tr., Docket Entry 15-7, 595:24-596:8.)

Matthews, though the named purchaser on the contract, never bought Service's home; instead, Petitioner told Matthews to sign the contract papers and Matthews would receive ten-to-fifteen thousand dollars. (Trial Tr., Docket Entry 15-14 1300:21-1301:11.) Matthews never signed the agreements, which, instead, were handled by Petitioner. (Trial Tr., Docket Entry 15-14, 1306:9-14.)

B. <u>Beatrice Williams Transaction</u>

In 2004, Petitioner went to Beatrice Williams' ("Williams") home and asked Williams if she was interested in selling her home. (Trial Tr., Docket Entry 15-9, 859:11-18; 862:1-5.) Although she had a tax lien on her home, Williams said she was not interested. (Resp't's Am. Br. at 8.) Petitioner told Williams she would not have to sell her home. (Trial Tr., Docket Entry 15-9, 864:16-18.) Petitioner told Williams to give him $1,000 and sign papers that, he said, would pay off the tax lien. (Trial Tr., Docket Entry 15-9, 869:1-5.) Petitioner did not tell Williams the document she signed was a contract of sale. (Trial Tr., Docket Entry 15-9, 873:23-25.) Like Service, Williams did not know that she was signing her deed and selling her house to Matthews. (Trial Tr., Docket Entry 15-9, 896:19-24.)

On February 11, 2005, Petitioner showed up unannounced at Williams' home and drove Williams and her son to an office. (Resp't's Am. Br. at 8.) Like the sale of Service's home, Matthews was listed as the buyer of William's home. (Resp't's Am. Br. at 8.) Matthews saw Williams signing documents on this date at the closing. (Trial Tr., Docket Entry 15-15, 1372:7-9.) Petitioner paid Matthews $20,000 for his role in the sale of Williams' home. (Trial Tr., Docket Entry 15-15, 1385:1-18.)

"From Service, [P]etitioner took $46,383.54 in proceeds that should have been paid to her; from Williams, he stole $110,500." (Resp't's Am. Br. at 2.)

II. <u>Legal Background</u>

Petitioner was charged with Grand Larceny in the Second Degree (New York Penal Law ("N.Y.P.L.") § 155.40(1)), Grand Larceny in the Third Degree (N.Y.P.L. § 155.35), and scheme to defraud in the First Degree (N.Y.P.L. § 190.65(1)(b)). (Resp't's Aff. at 5-6.) On September 4, 2007, at the conclusion of a jury trial, Petitioner was found guilty of each charge. (<u>See</u> Trial Tr., Docket Entry 15-18, 1727:11-17.) On November 16, 2007, after the court confirmed Petitioner's prior felony record (Sentencing Tr., Docket Entry 15-19, 4:14-5:7), the court sentenced Petitioner to a total of five-to-ten years in prison and restitution in the amount of $156,883.54. (Sentencing Tr., Docket Entry 15-19, 23:2-15.)

In January 2008, Petitioner filed a motion to vacate judgment. (Mot. to Vacate, Docket Entry 15-24.) Petitioner claimed he was denied effective assistance of counsel at trial. (<u>See</u> Aff. in Supp. of Mot. to Vacate, Docket Entry 15-24 at pp. 2-5, ¶ 3.) On February 7, 2008, the county court denied Petitioner's motion to vacate. (Order of the County Court, Docket Entry 15-28.) Petitioner did not appeal this decision.

On August 5, 2008, Petitioner filed a second motion to vacate his sentence arguing that it was harsh and excessive. (Second Mot. to Vacate, Docket Entry 15-26.) On December 16, 2008, the county court denied Petitioner's second motion to vacate. (Order of the County Court, Docket Entry 15-29.) Petitioner sought leave to appeal, which the Appellate Division denied on March 19, 2009. (Decision & Order, Docket Entry 15-30.)

In November 2008, Petitioner filed a direct appeal regarding his prison sentence. (See Appellant's Br., Docket Entry 15-31.) Petitioner argued that: (i) the trial court unlawfully imposed restitution, (ii) the jury's verdict was insufficiently supported by law, (iii) Petitioner's Fifth Amendment rights were violated when the trial court ordered Petitioner's hired attorney to testify against Petitioner; and (iv) Petitioner's Sixth Amendment rights were violated when the trial court disqualified his defense counsel. (See, e.g., Appellant's Br. at 2.)

On September 29, 2009, the Appellate Division affirmed the judgment. People v. Lawson, 65 A.D.3d 1380, 885 N.Y.S.2d 621 (N.Y. App. Div. 2d Dep't 2009). The court held that the evidence was legally sufficient to establish Petitioner's guilt beyond a reasonable doubt. Id. at 1380. The court also held that the disqualification of his original attorney "did not

deprive [Petitioner] of the right to the counsel of his choice .
. . . The County Court properly concluded that continued
representation . . . would create an actual conflict of
interest, as well as a violation of the 'advocate-witness'
rule." Id. (internal citations omitted). Finally, the court
held that Petitioner's restitution claim was unpreserved and,
thus, procedurally denied as well as substantively denied due to
sufficient support in the record to determine the specific
amount ordered by the trial court. Id. at 1380-1381.

Petitioner applied for leave to appeal to the New York
Court of Appeals, which denied the application on December 14,
2009. People v. Lawson, 13 N.Y.3d 908, 895 N.Y.S.2d 322, 922
N.E.2d 911 (N.Y. 2009).

## III. The Petition

Petitioner asserts the following grounds in his
Petition: (1) he was denied protection of attorney-client
privilege and Fifth Amendment protection against self-
incrimination; (2) he was denied his right to choose his counsel
under the Sixth Amendment; (3) the restitution was illegally
imposed; (4) the trial evidence was legally insufficient to
support a conviction; and (5) he was denied effective assistance

of trial counsel, under the Sixth Amendment. (See Pet., Docket Entry 1, at 5-11, 15.[3])

After Petitioner successfully sought to stay his Petition (see Pet'r's Mot. to Stay, Docket Entry 30; Feb. 14, 2012 Order, Docket Entry 33), he moved to add three additional claims. (See Pet'r's Mot. to Add Claims, Docket Entry 38.) This Court granted Petitioner's motion on March 26, 2013, thus adding the following grounds to the Petition: (6) Petitioner was denied his right to a speedy trial in violation of the Sixth Amendment; (7) Petitioner was denied his right to equal protection in violation of the Fourteenth Amendment; and (8) Petitioner was denied his right to be free from cruel and unusual punishment in violation of the Eighth Amendment. (See generally Pet'r's Mot. to Add Claims.)

## DISCUSSION

The Court will first address the applicable legal standard before turning to the merits of the Petition.

## I.  Legal Standard

"The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law." Harrington v. Richter, --- U.S. ----, 131 S. Ct. 770, 780, 178 L. Ed. 2d 624 (2011).

---

[3] Page numbers for Petition are those generated by the Electronic Case Filing System.

> The Supreme Court, a Justice thereof, a
> circuit judge, or a district court shall
> entertain an application for a writ of
> habeas corpus [on] behalf of a person in
> custody pursuant to the judgment of a State
> court only on the ground that he is in
> custody in violation of the Constitution or
> laws or treaties of the United States.

Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),
28 U.S.C. § 2254(a).

A federal court may grant a writ of habeas corpus to a state prisoner when prior state adjudication of the prisoner's case "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." Id. § 2254(d)(1). "This is a 'difficult to meet,' [] and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt[.]'" Cullen v. Pinholster, --- U.S. ----, 131 S. Ct. 1388, 1398, 179 L. Ed. 2d 557 (2011) (quoting Harrington, 131 S. Ct. at 786; Woodford v. Visciotti, 537 U.S. 19, 24, 123 S. Ct. 357, 154 L. Ed. 2d 279 (2002)).

During a review of a petition for a writ of habeas corpus, federal courts presume that the state court's factual determinations are correct. See 28 U.S.C. § 2254(e)(1).

A. <u>Exhaustion</u>

A state prisoner seeking federal habeas review of his state conviction is required to first exhaust all remedies available to him in state court. <u>See</u> 28 U.S.C. § 2254(b)(1)(A). "Exhaustion requires a petitioner fairly to present the federal claim in state court." <u>Jones v. Keane</u>, 329 F.3d 290, 294 (2d Cir. 2003). Presentation means a petitioner "has informed the State court of both the factual and the legal premises of the claim he asserts in Federal court." <u>Id.</u> at 295 (internal quotation marks and citations omitted).

B. <u>Procedural Default</u>

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

<u>Coleman v. Thompson</u>, 501 U.S. 722, 750, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991).

The Second Circuit "has held that 'federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim.'" <u>Glenn v.</u>

_Bartlett_, 98 F.3d 721, 724 (2d Cir. 1996) (quoting _Velasquez v._
_Leonardo_, 898 F.2d 7, 9 (2d Cir. 1990); citing _Harris v._
_Reed_, 489 U.S. 255, 264 n.10, 109 S. Ct. 1038, 1044 n.10, 103 L.
Ed. 2d 308 (1989); _Wedra v. Lefevre_, 988 F.2d 334, 338-39 (2d
Cir. 1993)).

II.  <u>Ground One: Attorney-Client Privilege, Self-Incrimination</u>

          Petitioner maintains that the trial court violated the
attorney-client privilege and improperly shifted the burden in
requiring two attorneys to testify against Petitioner.
Specifically, the trial court required Petitioner's hired
attorney, Gregory Abram ("Abram") to testify, as well as
Petitioner's former attorney, Kenneth Mock ("Mock").  The
prosecutor claimed that Petitioner left Abram's business card
with Service, leading Service to believe that Petitioner worked
for an attorney and inducing her into the subject transaction.
(<u>See</u>, <u>e.g.</u>, Nov. 23, 2009, Ltr. from Mark Diamond attached to
Petition "Pet. Addendum" at 2.[4])  Accordingly, the prosecutor
subpoenaed Abram to testify against Petitioner and called him in
its direct case.  (<u>See</u> Pet. Addendum at 3.)

          The prosecution also subpoenaed Mock noting that
Petitioner hired Mock to represent Petitioner's agent Matthews.
(<u>See</u> Pet. Addendum at 4.)  "The [trial] court ordered Mock to

_____

[4] The November 23, 2009, letter from Mark Diamond can be found
attached to the Petition, Docket Entry 1, at ECF pp. 16-27.)

testify over repeated objections in which he reiterated that he was not waiving his attorney[-]client privilege." (Pet. Addendum at 4.)

Thus, Petitioner asserts that the trial court erred.

A. Standard

1. Attorney-Client Privilege

"[T]he 'attorney-client privilege is a creation of the common law, not the Constitution.'" Smith v. Moore, 137 F.3d 808, 819 (4th Cir. 1998) (quoting Lange v. Young, 869 F.2d 1008, 1012 n.2 (7th Cir. 1989)). "Because federal habeas review is limited to 'violations of the United States Constitution or its law and treaties' . . . a mere violation of [Petitioner]'s attorney-client privilege would not warrant habeas relief[.]" Id. at 819-20 (quoting Cooper v. Taylor, 103 F.3d 366, 370 (4th Cir. 1996), cert. denied, 522 U.S. 824, 118 S. Ct. 83, 139 L. Ed. 2d 40 (1997); citing Lange, 869 F.2d at 1012 n.2).

"To elevate a violation of the attorney-client privilege to a constitutional claim of outrageous misconduct, a defendant must demonstrate '(1) the government's objective awareness of an ongoing, personal attorney-client relationship between its informant and the defendant; (2) deliberate intrusion into that relationship; and (3) actual and substantial prejudice.'" United States v. Hoffecker, 530 F.3d 137, 154 (3d Cir. 2008), cert. denied, 555 U.S. 1049, 129 S. Ct. 652, 172 L.

13

Ed. 2d 615 (2008) (quoting United States v. Voigt, 89 F.3d 1050, 1067 (3d Cir. 1996)).

2.  Self-Incrimination

"[T]he Fifth Amendment guarantees that no one may be 'compelled in any criminal case to be a witness against himself[.]'" Salinas v. Texas, --- U.S. ----, 133 S. Ct. 2174, 2182-83, 186 L. Ed. 2d 376 (2013) (quoting Hoffman v. United States, 341 U.S. 479, 486-87, 71 S. Ct. 814, 95 L. Ed. 1118 (1951)) (emphasis added).  The United States Supreme Court "adhere[s] to the view that the Fifth Amendment protects against 'compelled self-incrimination, not (the disclosure of) private information.'" Fisher v. United States, 425 U.S. 391, 401, 96 S. Ct. 1569, 48 L. Ed. 2d 39 (1976) (quoting United States v. Nobles, 422 U.S. 225, 233 n.7, 95 S. Ct. 2160, 2167 n.7, 45 L. Ed. 2d 141 (1975)); see also United States v. Seewald, 450 F.2d 1159, 1162 (2d Cir. 1971) (self-incrimination protects against "testimony [that] might incriminate one's self.")

B.  Analysis

"[A] mere violation of [Petitioner]'s attorney-client privilege would not warrant habeas relief[.]"  Smith, 137 F.3d at 819.  Moreover, the trial court's actions, as to attorney-client privilege, did not constitute "outrageous misconduct" as defined in Hoffecker.  530 F.3d at 154.  As Abram had been disqualified as counsel prior to his testimony, Abram did not

14

represent Petitioner, nor did Abram testify as to any confidential discussions with Petitioner. (See generally Trial Tr., Docket Entry 15-14, 1281:22-1295:20.) Privileged information was not at issue in his testimony. Rather, Abram testified that the business card Petitioner gave to Service was used from 1991 to 2003 and that the business card was not in use in 2004 (which is when Petitioner gave the card to Service). (Trial Tr., Docket Entry 15-14, 1286:21-1287:9.) Abram also testified that Petitioner was not employed by him in 2004. (Trial Tr., Docket Entry 15-14, 1287:10-13.)

In his trial testimony, the other attorney, Mock, did not discuss any confidential matters, nor did Petitioner's trial attorney raise any objections. (See generally Trial Tr., Docket Entry 15-16, 1528:23-1532:18.) Mock testified that he drafted two petitions against Service and Williams, respectively, with Matthews named as the petitioner/landlord. (Trial Tr., Docket Entry 15-16, 1530:25-1531:10.) Mock testified that he was paid by Petitioner for the work. (Trial Tr., Docket Entry 15-16, 1531:16-18.)

No privileged issues were discussed by Abram or Mock during the trial, and thus, the trial court's actions did not constitute outrageous misconduct.

As to self-incrimination via the testimony of these attorneys, self-incrimination protections involve compelling

testimony against one's self. See Salinas, 133 S. Ct. at 2182-83. Even if the attorneys' testimony concerned privileged issues, their testimony does not concern self-incrimination. Accordingly, Petitioner's claim on Ground One is DENIED.

III. Ground Two: Right to Choose Counsel

Before trial, the prosecution moved to disqualify Petitioner's chosen trial counsel, Abram, because the prosecution intended to call Abram as a witness. (Pet. Addendum at 6.) The trial court disqualified Abram based on this conflict. Petitioner argues that Abram's testimony was unnecessary and that the trial court erred in disqualifying Abram.

A. Standard

"The Sixth Amendment commands that '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence [sic].'" Lainfiesta v. Artuz, 253 F.3d 151, 154 (2d Cir. 2001) (quoting U.S. CONST. amend. VI). "This right to counsel applies to the States through the Fourteenth Amendment." Id. (citing Gideon v. Wainwright, 372 U.S. 335, 342, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963). "Inherent in a defendant's right to control the presentation of his defense is the right to choose the counsel who presents it." Id. (citing Caplin & Drysdale, Chartered v.

United States, 491 U.S. 617, 624, 109 S. Ct. 2646, 105 L. Ed. 2d 528 (1989)).

"[T]he essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." Wheat v. United States, 486 U.S. 153, 159, 108 S. Ct. 1692, 100 L. Ed. 2d 140 (1988); see also id. at 158 ("In United States v. Morrison, 449 U.S. 361, 364, 101 S. Ct. 665, 667, 66 L. Ed. 2d 564 (1981), we observed that this right was designed to assure fairness in the adversary criminal process.")

"[W]here a court justifiably finds an actual conflict of interest, there can be no doubt that it may . . . insist that defendant[] be separately represented" by new counsel. Wheat, 486 U.S. at 162 (citing United States v. Dolan, 570 F.2d 1177, 1184 (3d Cir. 1978)). "Courts have also considered disqualification where the chosen counsel is implicated in the allegations against the accused[.]" United States v. Locascio, 6 F.3d 924, 931 (2d Cir. 1993) (citing United States v. Arrington, 867 F.2d 122, 129 (2d Cir. 1989), cert. denied, 493 U.S. 817, 110 S. Ct. 70, 107 L. Ed. 2d 37 (1989); United States v. Kwang Fu Peng, 766 F.2d 82, 87 (2d Cir. 1985)).

B. <u>Analysis</u>

Before trial, "the prosecutor moved to disqualify [Petitioner's] attorney, Gregory Abram[.]" (Pet. Addendum at 6.) The prosecution did so because Abram "would be called as a witness against [Petitioner]." (Resp't's Appellate Br., Docket Entry 15-32, at 33.) "[T]he trial court granted the motion[], citing a conflict of interest between Abram, as the sole source of important evidence against [Petitioner], and his client." (Resp't's Appellate Br. at 33.) The Appellate Division affirmed this decision by holding that the trial court "properly concluded that continued representation . . . would create an actual conflict of interest, as well as a violation of the 'advocate-witness' rule." <u>Lawson</u>, 65 A.D. 3d at 1380, 885 N.Y.S. 2d at 622.

Moreover, the prosecutor planned to introduce evidence that Abram acted with Petitioner. (<u>See</u> Resp't's Appellate Br. at 39.) Counsel had reason, therefore, to protect himself from criminal prosecution. Even if Petitioner still wanted Abram to represent him, the court's decision not to grant a waiver was reasonable. <u>See</u> <u>United States v. Fulton</u>, 5 F.3d 605, 610 (2d Cir. 1993) (not granting a waiver because counsel's "[a]dvice as well as advocacy [would be] permeated by counsel's self-interest, and no rational defendant would knowingly and

intelligently be represented by a lawyer whose conduct was guided largely by a desire for self-preservation.")

The Appellate Division's holding was not "an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The Appellate Division found an actual conflict of interest and affirmed the trial court's right to remove counsel. This reasonably applied Federal law. See Wheat, 486 U.S. at 162. Accordingly, Petitioner's claim on Ground Two is DENIED.

## IV. Ground Three: Restitution

Petitioner argues that restitution was ordered by the trial court without the necessary procedural requirements. (See Pet. Addendum at 7.) Petitioner argues that restitution was not discussed during sentencing, nor did Petitioner have the opportunity to challenge the restitution order. (See Pet. Addendum at 7.)

### A. Standard

As to habeas review, "[a]n individual is held 'in custody' . . . when the [] official charged with his detention has 'the power to produce' him." Munaf v. Green, 553 U.S. 674, 686, 128 S. Ct. 2207, 2217, 171 L. Ed. 2d 1 (2008) (citing Wales v. Whitney, 114 U.S. 564, 574, 5 S. Ct. 1050, 29 L. Ed. 277

(1885); 28 U.S.C. § 2243; see also Maleng v. Cook, 490 U.S. 488, 490-92, 109 S. Ct. 1923, 1924, 104 L. Ed. 2d 540 (1989).

"The payment of restitution or a fine, absent more, is not the sort of 'significant restraint on liberty' contemplated in the 'custody' requirement of the federal habeas corpus statutes. Obado v. New Jersey, 328 F.3d 716, 718 (3d Cir. 2003) (citing Tinder v. Paula, 725 F.2d 801, 803 (1st Cir. 1984)); see also id. at 717 (being "in custody" requires "'some type of continuing governmental supervision.'" (quoting Barry v. Bergen Cnty. Prob. Dept., 128 F.3d 152, 160 (3d Cir. 1997)).

B.  Analysis

The Appellate Division held that Petitioner's claim as to restitution was unpreserved for appellate review "since [Petitioner] failed to request a hearing or otherwise challenge the amount of restitution imposed at sentencing." Lawson, 65 A.D. 3d 15 at 1380, 885 N.Y.S.2d at 622.  Petitioner argues that he "could not object to it, because the trial court ordered restitution sua sponte after sentencing, without [Petitioner] being told about it or given an opportunity to challenge it." (Pet. Addendum at 8) (emphasis in original).  Respondent argues that "restitution was raised by both the prosecutor and the court during the sentencing proceedings."  (Resp't's Appellate Br. at 24) (emphasis in original).  Restitution was, indeed, raised during sentencing by the prosecutor (Sentencing Tr.,

Docket Entry 15-19, 7:11-16) and the court's sentence included restitution. (Sentencing Tr., Docket Entry 15-19, 23:10-15.) As the Appellate Division noted, Petitioner did not challenge the restitution order or the amount. Lawson, 65 A.D. 3d at 1380, 885 N.Y.S.2d at 622.

As Petitioner failed to preserve his appeal, "federal habeas review is foreclosed." Glenn, 98 F.3d at 724. Moreover, the payment of restitution does not fit the custody requirement of the federal habeas corpus statute. See Obado, 328 F.3d at 718. The claim would fail substantively as well since the Court holds the Appellate Division was reasonable in determining "there was sufficient support in the record for the [sentencing] court's determination of the amount of restitution." Lawson, 65 A.D. 3d at 1381, 885 N.Y.S.2d at 622; see also 28 U.S.C. § 2254(e)(1) (federal courts presume the state court's factual determinations are correct.) On procedural and substantive grounds, therefore, the claim is DENIED.

V.   Ground Four: Sufficiency of Evidence

Petitioner argues that the trial court erred in denying Petitioner's trial motion to dismiss as there was "legally insufficient evidence to convict." (Pet. Addendum at 8.) Petitioner argues the evidence supported Petitioner's view that he "offered to buy, not refinance, Ms. Service's house." (Pet. Addendum at 8-9.) Petitioner argues that Service was

angry because she was evicted for failure to pay rent. (Pet. Addendum at 10.)

Petitioner argues that the evidence shows Williams already intended to sell her home. (Pet. Addendum at 10.) Petitioner argues that the evidence shows Williams executed all closing documents, but, in her trial testimony, claimed she did not know what she was signing. (Pet. Addendum at 11.) Petitioner argues that the evidence shows that Williams also admitted that she benefitted financially from the sale. (Pet. Addendum at 11.)

A. <u>Standard</u>

"A person is guilty of grand larceny in the second degree when he steals property and when: [] [t]he value of the property exceeds fifty thousand dollars[.]" (N.Y. PENAL LAW § 155.40(1)). "A person is guilty of grand larceny in the third degree when he [] steals property and: [] when the value of the property exceeds three thousand dollars[.]" (N.Y. PENAL LAW § 155.35(1)).

> 1. A person is guilty of a scheme to defraud in the first degree when he . . . (b) engages in a scheme constituting a systematic ongoing course of conduct with intent to defraud more than one person or to obtain property from more than one person by false or fraudulent pretenses, representations or promises, and so obtains property with a value in excess of one thousand dollars from one or more such persons[.]

(N.Y. PENAL LAW § 190.65(1)(b)).[5]

The Court "review[s] the decision of the state court under the federal sufficiency standard set forth by the Supreme Court in _Jackson v. Virginia_, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)." _Gutierrez v. Smith_, 702 F.3d 103, 113 (2d Cir. 2012) (citing _Epps v. Poole_, 687 F.3d 46, 50 (2d Cir. 2012)). "The relevant question under _Jackson_ is whether, 'after viewing the evidence in the light most favorable to the prosecution, _any_ rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" _Id._ (emphasis in original) (citing _Jackson_, 443 U.S. at 319). "When considering the sufficiency of the evidence of such a state conviction, a federal court 'must consider the evidence in the light most favorable to the prosecution and make all inferences in its favor,' and, in doing this, 'must look to state law to determine the elements of the crime.'" _Id._ (citing _Fama v. Comm'r of Corr. Servs._, 235 F.3d 804, 811 (2d Cir. 2000)).

B. Analysis

As Respondent argues, "[b]oth victims . . . testified that [Petitioner] tricked them into selling their homes and then

_____

[5] "In any prosecution under this section, it shall be necessary to prove the identity of at least one person from whom the defendant so obtained property[.]" (N.Y. PENAL LAW § 190.65(2)).

stole some or all of the proceeds of the sales." (Resp't's Br.

at 38.[6])

> The evidence adduced at trial showed that
> [Petitioner] accomplished his crimes by,
> among other things, committing forgery,
> submitting fraudulent mortgage applications
> in another man's name, and making repeated
> misrepresentations about the transactions to
> Service, Williams, and others. The testimony
> of the two victims was corroborated by the
> testimony of multiple additional witnesses,
> including two of [Petitioner's] cohorts.

(Resp't's Br. at 38-39.)

Respondent's brief reviewed the prosecutor's trial

presentation (Resp't's Br. at 4-12) and Petitioner's trial

presentation. (Resp't's Br. at 12-13.) Respondent's review

matches the record as reviewed by this Court. (See generally

Trial Tr., Docket Entries 15-6 to 15-17, 455:18-1664:12.) The

Court notes, as Respondent argues, that "[t]he testimony of the

two victims was corroborated by the testimony of multiple

additional witnesses, including two of [Petitioner's] cohorts."

(Resp't's Appellate Br. at 29.)

For example, as to Service's home, Petitioner told

Service that she was signing a loan refinance agreement, while

in reality, she was signing a contract of sale. (Trial Tr.,

Docket Entry 15-6, 538:9-539:8.) Petitioner used his hand to

cover the part of the signature page that said "contract of

---

[6] Respondent's Brief can be found at Docket Entry 15, ECF pp. 12-
56.

sale". (Trial Tr., Docket Entry 15-6, 538:9-18.) Petitioner only presented the signature page of the contract of sale to Service, not the entire four-page document. (Trial Tr., Docket Entry 15-6, 530:6-19.) Petitioner told Service she would receive $10,000 at the sale closing (which Service thought was a loan refinancing closing), but she received nothing from the transaction. (Trial Tr., Docket Entry 15-6, 540:18-541:4.) According to the testimony of Ms. Bautista, the real estate broker at the transaction (Trial Tr., Docket Entry 15-8, 746:12-13), Service was entitled to $66,893 net proceeds from the transaction. (Trial Tr., Docket Entry 15-8, 756:15-20.) Service did not know Petitioner would receive the net proceeds. (Trial Tr., Docket Entry 15-7, 598:2-6.) If she had known Petitioner would receive $46,000 at the closing, Service would not have given her consent. (Trial Tr., Docket Entry 15-7, 598:7-10.)

The prosecution showed sufficient proof as to the Williams transaction as well. As noted, Petitioner told Williams she would not have to sell her home. (Trial Tr., Docket Entry 15-9, 864:16-18.) Petitioner told Williams to give him $1,000 and sign papers that, he said, would pay off the tax lien. (Trial Tr., Docket Entry 15-9, 869:1-5.) Petitioner did not tell Williams that the document she signed was a contract of sale. (Trial Tr., Docket Entry 15-9, 873:23-25.) Like Service,

Williams did not know that she was signing her deed to Matthews. (Trial Tr., Docket Entry 15-9, 896:19-24.)

As noted, "[f]rom Service, [P]etitioner took $46,383.54 in proceeds that should have been paid to her; from Williams, he stole $110,500." (Resp't's Am. at Br. 2).

The Court finds that a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Gutierrez, 702 F.3d at 113. Accordingly, the Petition on Ground Four is DENIED.

VI. Ground Five: Effective Assistance of Counsel

Petitioner argues his trial counsel, Joseph Lo Piccolo ("Lo Piccolo"), "did not have [Petitioner's] best interests at heart and was deeply irritated and prejudice[d] with and against [Petitioner]." (Pet. at 15.) Petitioner claims that Lo Piccolo stated "'I [will] do my best to get you convicted.'" (Pet. at 15.) Petitioner also argues that Lo Piccolo failed to preserve Petitioner's appellate rights as to the restitution order. (Pet. at 15.)

A. Standard

"It has long been recognized that the right to counsel is the right to the effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 n.14, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970) (citing Reece v. Georgia, 350 U.S. 85, 90, 76 S. Ct. 167, 170, 100 L. Ed. 77 (1955); Glasser v. United States, 315

U.S. 60, 69-70, 62 S. Ct. 457, 464-65, 86 L. Ed. 680 (1942); Avery v. Alabama, 308 U.S. 444, 446, 60 S. Ct. 321, 322, 84 L. Ed. 377 (1940); Powell v. Alabama, 287 U.S. 45, 57, 53 S. Ct. 55, 59-60, 77 L. Ed. 158 (1932)).

"[T]he proper standard for attorney performance is that of reasonably effective assistance[;] . . . the defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland v. Washington, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Id. at 688.

"[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound [] strategy." Id. at 689 (internal quotation marks and citation omitted).

B.  Analysis

While Petitioner included this claim in his motion to vacate judgment (see Mot. to Vacate), he did not appeal the county court's denial of that motion. Petitioner, therefore, did not fulfill his procedural requirements for this claim. See Pesina v. Johnson, 913 F.2d 53 (2d Cir. 1990). As Petitioner

has not demonstrated cause for this procedural default, federal habeas review is barred as to this claim.  See Coleman, 501 U.S. at 750.

Substantively, Petitioner offers no evidence of his meritless allegations and, thus, fails to overcome the presumption that counsel's representation was reasonable.  See Strickland, 466 U.S. at 689.  Petitioner's trial counsel, Joseph Lo Piccolo, filed a seven-page affidavit, which refutes each allegation.  (Resp't's Br., Ex. A.[7])  Accordingly, the Petition on this ground is DENIED.

## VII. Denial of 6th, 8th, and 14th Amendment Rights (Pre-Trial Adjournment

At a hearing on November 29, 2005, Petitioner requested a twenty-five day adjournment to permit him to find private trial counsel.  (See Resp't's Am. Br. at 17.) Petitioner argues that the hearing should not have taken place without court-appointed counsel and that he should have been read his Miranda rights.  (See Pet'r's Mot. to Add Claims at 2-3.)

On August 13, 2012, Petitioner filed a motion to amend his Petition to include these claims.  (See Pet'r's Mot. to Add Claims.)  As Respondent notes, "the New York Supreme Court denied petitioner's motion . . . after holding that these

---

[7] Exhibit A can be found attached to Respondent's Brief, Docket Entry 15 at ECF pp. 58-64.

meritless claims were barred . . . due to [Petitioner's] failure to raise them on direct appeal from his judgment of conviction, despite a record that was sufficient to have permitted adequate appellate review." (Resp't's Am. Br. at 17.) As Petitioner has not demonstrated cause for the procedural default, federal habeas review is barred. See Coleman, 501 U.S. at 750 (holding that federal habeas review of a claim is barred where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule . . . unless the prisoner can demonstrate cause for the default and actual prejudice . . . .).

Substantively, Petitioner argues that he was not represented in court at a conference in which Petitioner asked the court for adjournment. (See Pet'r's Mot. to Add Claims at 2-3.) Petitioner has a "constitutional right to the effective assistance of counsel, which [] extends only to critical stages of the proceedings." McKethan v. Mantello, 522 F.3d 234, 239 (2d Cir. 2008) (citing Iowa v. Tovar, 541 U.S. 77, 80-81, 124 S. Ct. 1379, 158 L. Ed. 2d 209 (2004)). The conference-in-question regarded only an adjournment and was, thus, not a critical stage of the proceedings. See id. at 238-39 ("The only decision made by the court at the [] conference . . . was the decision to

adjourn the proceedings", which is not considered a critical stage.).[8]

Procedurally and substantively, the Petition on these grounds is DENIED.

VIII.  Motion for Discovery

A.  Standard

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course."  Bracy v. Gramley, 520 U.S. 899, 904, 117 S. Ct. 1793, 1796, 138 L. Ed. 2d 97 (1997); see also Drake v. Portuondo, 321 F.3d 338, 346 (2d Cir. 2003).  Regarding habeas review, "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery."  Rules Governing Section 2254 Cases in the U.S. District Courts, Rule 6(a).

B.  Analysis

Petitioner filed a motion for discovery in which Petitioner asks "[R]espondent or any other non[-]party to produce the [f]elony complaint of Mrs. Beatrice Williams [that] charge[d]

---

[8] Holding, additionally, that "a status conference . . . is not typically a 'stage of the criminal proceeding that is critical to its outcome[.]'"  McKethan, 522 F.3d at 238 (quoting Kentucky v. Stincer, 482 U.S. 730, 745, 107 S. Ct. 2658, 2667, 96 L. Ed. 2d 631 (1987)).

[Petitioner] with Grand Larceny [in the second degree[.]"[9] (Pet'r's Mot. for Disc., Docket Entry 49, at 1.) The Court finds no good cause to authorize discovery as there is no reason any such discovery will affect the outcome of the underlying petition. See Rules Governing Section 2254 Cases, Rule 6(a). Petitioner's motion for discovery is DENIED.

IX. Motion for Counsel

Petitioner requests that the Court appoint counsel to represent him as to his habeas petition. (See Pet'r's Mot. to Add Claims at 1.) "[A] habeas petitioner has no constitutional right to counsel in his habeas proceeding." Harris v. United States, 367 F.3d 74, 77 (2d Cir. 2004) (citing Coleman, 501 U.S. at 752-53.) The Court has discretion as to whether to appoint counsel during habeas proceedings. See, e.g., U.S. ex rel. Cadogan v. LaVallee, 502 F.2d 824, 825 (2d Cir. 1974) ("Where, as here, an evidentiary hearing is unnecessary, the appointment of counsel to represent a pro se habeas petitioner rests in the court's discretion." (citation omitted)).

As the Court finds no merit to the Petition, and, thus, no need for an evidentiary hearing, Petitioner's motion to appoint counsel is DENIED.

---

[9] Petitioner has also raised requests for discovery, as well as for the appointment of counsel, in various letters to the Court.

## CONCLUSION

For the reasons set forth above, Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DENIED. Because there can be no debate among reasonable jurists that Petitioner was entitled to habeas relief, the Court does not issue a Certificate of Appealability. 28 U.S.C. § 2253(c); see also Middleton v. Att'ys Gen., 396 F.3d 207, 209 (2d Cir. 2005).

The Clerk of the Court is directed to mail a copy of this Memorandum and Order to the pro se Petitioner and to mark this matter CLOSED.

SO ORDERED.


/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:  May  27 , 2014
        Central Islip, NY